

# Terms for Carriage

## 1. Definitions

**"Carriage"** means the whole or any part of the carriage, loading, unloading, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Goods.

**"Carrier"** means Maersk Line A/S of 50 Esplanaden, DK-1098, Copenhagen K, Denmark.

**"Container"** includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

**"Freight"** includes all charges payable to the Carrier in accordance with the applicable Tariff and this bill of lading.

**"Goods"** means the whole or any part of the cargo and any packaging accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

**"Hague Rules"** means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924.

**"Holder"** means any Person for the time being in possession of this Bill of Lading or to whom rights of suit and/or liability under this bill of lading have been transferred or vested.

**"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this bill of lading and anyone acting on behalf of such Person.

**"Multimodal Transport"** arises if the Place of Receipt and/or the Place of Delivery are indicated on the reverse hereof in the relevant boxes.

**"Ocean Transport"** arises if the Carriage is not Multimodal Transport.

**"Person"** includes an individual, corporation, or other legal entity.

**"Subcontractor"** includes owners, charterers and operators of vessels (other than the Carrier), stevedores, terminal and groupage operators, road and rail transport operators, warehousemen, and any independent contractors employed by the Carrier performing the Carriage or whose services or equipment have been used for the Carriage and any direct or indirect subcontractors, servants and agents thereof whether in direct contractual privity or not.

**"Terms and Conditions"** means all terms, rights, defences, provisions, conditions, exceptions, limitations and liberties hereof.

**"US COGSA"** means the US Carriage of Goods by Sea Act 1936.

**"Vessel"** means any water borne craft used in the Carriage under this bill of lading which may be a feeder vessel or an ocean vessel.

## 2. Carrier's Tariff

The terms and conditions of the Carrier's applicable Tariff are incorporated herein. Attention is drawn to the terms therein relating to free storage time and to container and vehicle demurrage or detention. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this bill of lading and the applicable Tariff, the bill of lading shall prevail.

## 3. Warranty

The Merchant warrants that in agreeing to the Terms and Conditions hereof he is, or has the authority to contract on behalf of, the Person owning or entitled to possession of the Goods and this bill of lading.

## 4. Sub Contracting

4.1 The Carrier shall be entitled to sub contract on any terms whatsoever the whole or any part of the Carriage.

4.2 It is hereby expressly agreed that:

(a) No Subcontractor, agent or servant shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on the Subcontractor, agent or servant's part while acting in the course of or in connection with the Goods or the Carriage of the Goods.

(b)

(i) The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the Carriage of the Goods whether or not arising out of negligence on the part of such Person. The Subcontractor, agent or servant shall also be entitled to enforce the foregoing covenant against the Merchant; and

(ii) if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

(c) Without prejudice to the generality of the foregoing provisions of this clause, every exemption, limitation, condition and liberty contained herein (other than Art III rule 8 of the Hague Rules) and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder including the right to enforce any jurisdiction provision contained herein (clause 26) shall also be available and shall extend to every such Subcontractor, agent or servant, who shall be entitled to enforce the same against the Merchant.

4.3 The provisions of clause 4.2(c) including but not limited to the undertaking of the Merchant contained therein, shall extend to all claims or allegations of whatsoever nature against other Persons chartering space on the carrying vessel.

4.4 The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with these Terms and Conditions which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

## 5. Carrier's Responsibility: Ocean Transport

5.1 Where the Carriage is Ocean Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Port of Loading to the Port of Discharge. The liability of the Carrier for loss of or damage to the Goods occurring between the time of acceptance by the Carrier of custody of the Goods at the Port of Loading and the time of the Carrier tendering the Goods for delivery at the Port of Discharge shall be determined in accordance with Articles 1-8 of the Hague Rules save as is otherwise provided in these Terms and Conditions. These articles of the Hague Rules shall apply as a matter of contract.

5.2 The Carrier shall have no liability whatsoever for any loss or damage to the Goods, howsoever caused, if such loss or damage arises before acceptance by the Carrier of custody of the Goods or after the Carrier tendering the cargo for delivery. Notwithstanding the above, to the extent any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defence, limitation and liberty in the

notwithstanding that the loss or damage did not occur at sea.

5.3 Where US COGSA applies then the provisions stated in the said Act shall govern during Carriage to or from a container yard or container freight station at the Port of Loading before loading on the vessel or at the Port of Discharge before delivery to an inland carrier.

5.4 If the Carrier is requested by the Merchant to procure Carriage by an inland carrier and the inland carrier in his discretion agrees to do so, such Carriage shall be procured by the Carrier as agent only to the Merchant and Carrier shall have no liability for such carriage or the acts or omissions of such inland carrier.

## 6. Carrier's Responsibility Multimodal Transport

Where the Carriage is Multimodal Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. The Carrier shall have no liability whatsoever for loss or damage to the Goods occurring before acceptance by the Carrier of custody of the Goods or after the Carrier tendering the Goods for delivery at the applicable points, and, the Carrier shall be liable for loss or damage occurring during the Carriage only to the extent set out below:

6.1 Where the stage of Carriage where loss or damage occurred is not known.

(a) The Carrier shall be relieved of liability for any loss or damage where such loss or damage was caused by:

(i) an act or omission of the Merchant or Person acting on behalf of the Merchant other than the Carrier, his servant, agent or Subcontractor;

(ii) compliance with instructions of any Person entitled to give them;

(iii) insufficient or defective condition of packing or marks;

(iv) handling, loading, stowage or unloading of the Goods by the Merchant or any Person acting on his behalf;

(v) inherent vice of the Goods;

(vi) strike, lock out, stoppage or restraint of labour, from whatever cause, whether partial or general;

(vii) a nuclear incident;

(viii) any cause or event which the Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.

(b) The burden of proof that the loss or damage was due to a cause(s) or event(s) specified in clause 6.1 shall rest on the Carrier, but if there is any evidence the loss or damage is attributable to one or more cause or event specified in clause 6.1(a)(iii), (iv) or (v), it shall be presumed that it was so caused. The Merchant shall, however, be entitled to prove that the loss or damage was not, in fact, caused either wholly or partly by one or more of these causes or events.

6.2 Where the stage of Carriage where the loss or damage occurred is known notwithstanding anything provided for in clause 6.1 and subject to clause 18, the liability of the Carrier in respect of such loss or damage shall be determined:

(a) if the loss or damage is known to have occurred during Carriage by sea for shipments not to or from the United States of America or waterborne Carriage not in the U.S. by the Hague Rules Articles 1-8. These articles of the Hague Rules shall apply as a matter of contract; or

(b) if the loss or damage is known to have occurred during any inland carriage not in the U.S. in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or in accordance with clauses 6.1 and clause 7.2(a), whichever imposes lesser liability on the Carrier; or

(c) if the loss or damage is known to have occurred during Carriage by sea, for shipments to or from the United States of America, or waterborne Carriage in the United States of America or Carriage to or from a container yard or container freight station at Port of Loading before loading on the carrying vessel or at the Port of Discharge before delivery to the inland carrier, by the provisions of U.S. COGSA; or

(d) if the loss or damage is known to have occurred during any inland carriage in the U.S., in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or U.S. COGSA whichever imposes lesser liability on the Carrier.

# 7. Compensation and Liability Provisions

7.1 Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by reference to the value of the Goods plus Freight and insurance if paid. The value of the Goods shall be determined with reference to the commercial invoice, customs declaration, any prevailing market price (at the place and time they are delivered or should have been delivered), production price or the reasonable value of goods of the same kind and/or quality.

7.2 Save as is provided in clause 7.3:

(a) the Carrier's liability shall in no event exceed 2 SDR per kilo of the gross weight of the Goods lost, damaged or in respect of which a claim of whatsoever nature arises unless clause 7.2(b) applies;

(b) for shipments to or from the U.S., the liability of the Carrier and/or Vessel shall not exceed USD 500 per Package or customary freight unit, or any lesser limitation afforded per Clause 6.2.

7.3 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this bill of lading may be claimed only when, with the consent of the Carrier, (i) for multimodal shipments from the U.S. where U.S. inland carriage is undertaken, the Merchant elects to avoid any liability limitation provided herein by prepaying extra freight and opting for full liability under the Carmack Amendment by complying with the terms in Carrier's Tariff; and (ii) in all other cases, the Shipper declares and the Carrier states the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked "Declared Value" on the reverse of this bill of lading and extra freight paid. In that case, the amount of the declared value shall be substituted for the limits laid down in this bill of lading. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

7.4 Nothing in this bill of lading shall operate to limit or deprive the Carrier of any statutory protection, defence, exception or limitation of liability authorised by any applicable laws, statutes or regulations of any country. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of any carrying Vessel.

# 8. General

8.1 The Carrier does not undertake that the Goods or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular requirement of any licence, permission, sale contract, or credit of the Merchant or any market or use of the Goods and the Carrier shall under no circumstances whatsoever and howsoever arising be liable for any direct, indirect or consequential loss or damage caused by delay.  If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by delay, such liability shall in no event exceed the Freight paid.

8.2 Save as is otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause whatsoever or for loss of profits.

8.3 Once the Goods have been received by the Carrier for Carriage the Merchant shall not be entitled neither to impede, delay, suspend or stop or otherwise interfere with the Carrier's intended manner of performance of the Carriage or the exercise of the liberties conferred by this bill of lading nor to instruct or require delivery of the Goods at other Port or Place than the Port of Discharge or Place of Delivery named on the reverse hereof or such other Port or Place selected by the Carrier in the exercise of the liberties herein, for any reason whatsoever. The Merchant shall indemnify the Carrier against all claims, liabilities, losses, damages, costs, delays, attorney fees and/or expenses caused to the Carrier, his Subcontractors, servants or agents or to any other cargo or to the owner of such cargo during the Carriage arising or resulting from any impediment, delay, suspension, stoppage or interference whatsoever in the Carriage of the Goods.

8.4 These Terms and Conditions shall govern the responsibility of the Carrier in connection with or arising out of the supplying of a Container to the Merchant whether before, during or after the Carriage.

## 9. Notice of Loss, Time Bar

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the Place of Delivery (or Port of Discharge if no Place of Delivery is named on the reverse hereof) before or at the time of removal of the Goods or if the loss or damage is not apparent within three days thereafter, such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this bill of lading. In any event, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after their delivery or the date when they should have been delivered.

## 10. Application of Terms and Conditions

These Terms and Conditions shall apply in any action against the Carrier for any loss or damage whatsoever and howsoever occurring (and, without restricting the generality of the foregoing, including delay, late delivery and/or delivery without surrender of this bill of lading) and whether the action be founded in contract, bailment or in tort and even if the loss, damage or delay arose as a result of unseaworthiness, negligence or fundamental breach of contract.

## 11. Shipper-Packed Containers

If a Container has not been packed by the Carrier:

11.1 This bill of lading shall be a receipt only for such a Container;

11.2 The Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense whatsoever incurred by the Carrier if such loss of or damage to the contents and/or such injury, loss, damage, liability or expense has been caused by any matter beyond his control including, inter alia, without prejudice to the generality of this exclusion:

(a) the manner in which the Container has been packed; or

(b) the unsuitability of the Goods for carriage in Containers; or

(c) the unsuitability or defective condition of the Container; or

(d) the incorrect setting of any thermostatic, ventilation, or other special controls thereof, provided that, if the Container has been supplied by the Carrier, this unsuitability or defective condition could have been apparent upon reasonable inspection by the Merchant at or prior to the time the Container was packed.

11.3 The Merchant is responsible for the packing and sealing of all shipper packed Containers and, if a shipper packed Container is delivered by the Carrier with any original seal intact, the Carrier shall not be liable for any shortage of Goods ascertained at delivery.

11.4 The Shipper shall inspect Containers before packing them and the use of Containers shall be prima facie evidence of their being sound and suitable for use.

## 12. Perishable Cargo

12.1 Goods, including Goods of a perishable nature, shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this bill of lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specifically equipped Container or are to receive special attention in any way.  The Merchant undertakes not to tender for Carriage any Goods which require refrigeration, ventilation or any other specialised attention without giving written notice of their nature and the required temperature or other setting of the thermostatic, ventilation or other special controls. If the above requirements are not complied with, the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

12.2 The Merchant should note that refrigerated Containers are not designed

(a) to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo being presented at a higher temperature than that required for the Carriage; nor

(b) to monitor and control humidity levels, albeit a setting facility exists, in that humidity is influenced by many external factors and the Carrier does not guarantee the maintenance of any intended level of humidity inside any Container.

12.3 The term "apparent good order and condition" when used in this bill of lading with reference to goods which require refrigeration, ventilation or other specialised attention does not mean that the Goods, when received, were verified by the Carrier as being at the carrying temperature, humidity level or other condition designated by the Merchant.

12.4 The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of the refrigerating, ventilating or any other specialised machinery, plant, insulation and/or apparatus of the Container, Vessel, conveyance and any other facilities, provided that the Carrier shall before and at the beginning of the Carriage exercise due diligence to maintain the Container supplied by the Carrier in an efficient state.

# 13. Inspection of Goods

The Carrier shall be entitled, but under no obligation, to open and/or scan any package or Container at any time and to inspect the contents. If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measures and/or incur any reasonable additional expense to carry or to continue the Carriage thereof, and/or to sell or dispose of the Goods and/or to abandon the Carriage and/or to store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in his absolute discretion considers most appropriate, which sale, disposal, abandonment or storage shall be deemed to constitute due delivery under this bill of lading. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

# 14. Description of Goods

14.1 This bill of lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carrier's Receipt" on the reverse side hereof.

14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

14.3 The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs or other illegal substances or stowaways, and that the Goods will not cause loss, damage or expense to the Carrier, or to any other cargo.

14.4 If any particulars of any letter of credit and/or import license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the face of this bill of lading, such particulars are included at the sole risk of the Merchant and for his convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases Carrier's liability under this bill of lading.

## 15. Merchant's Responsibility

15.1 All of the Persons coming within the definition of Merchant in clause 1, including any principal of such Person, shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this bill of lading.

15.2 The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, delay, fines, attorney fees and/or expenses arising from any breach of any of the warranties in clause 14.3 or elsewhere in this bill of lading and from any other cause whatsoever in connection with the Goods for which the Carrier is not responsible.

15.3 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional Carriage undertaken) incurred or suffered by reason of any failure to so comply, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof.

15.4 If Containers supplied by or on behalf of the Carrier are unpacked by or for the Merchant, the Merchant is responsible for returning the empty Containers, with interiors clean, odour free and in the same condition as received, to the point or place designated by the Carrier, within the time prescribed. Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof.

15.5 Containers released into the care of the Merchant for packing, unpacking or any other purpose whatsoever are at the sole risk of the Merchant until redelivered to the Carrier. The Merchant shall indemnify the Carrier for all loss of and/or damage and/or delay to such Containers, and all liability claims from third parties or costs or fines resulting from Merchant's use of such Containers. Merchants are deemed to be aware of the dimensions and capacity of any Containers released to them.

## 16. Freight Expenses and Fees

16.1 Full Freight shall be payable based on particulars furnished by or on behalf of the Shipper. The Carrier may at any time open the Goods or Container(s) and, if the Shipper's particulars are incorrect the Merchant and the Goods shall be liable for the correct Freight and any expenses incurred in examining, weighing, measuring, or valuing the Goods.

16.2 Full Freight shall be considered completely earned on receipt of the Goods by the Carrier and shall be paid and non returnable in any event.

16.3 All sums payable to the Carrier are due on demand and shall be paid in full in United States currency or, at the Carrier's option, in its equivalent in the currency of the Port of Loading or of Discharge or the Place of Receipt or of Delivery or as specified in the Carrier's Tariff.

16.4 The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation, additional insurance premium and other contingencies relative to Freight in the applicable Tariff. In the event of any discrepancy between Freight (incl. charges etc) items in the bill of lading and any Carrier invoices, the latter shall prevail.

16.5 All Freight shall be paid without any set off, counter claim, deduction or stay of execution at latest before delivery of the Goods.

16.6 If the Merchant fails to pay the Freight when due he shall be liable also for payment of service fee, interest due on any outstanding and/or overdue sum reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier. Payment of Freight and charges to a freight forwarder, broker or anyone other than the Carrier or its authorised agent, shall not be deemed payment to the Carrier and shall be made at the Merchant's sole risk.

16.7 Despite the acceptance by the Carrier of instructions to collect Freight, duties, fees, demurrage/detention and costs and expenses from the shipper or consignee or any other Person, then, in the absence of evidence of payment (for whatever reason) by such shipper or consignee or other Person when due, the Merchant shall remain responsible for and for the payment of such Freight, duties, fees, demurrage/detention and costs and expenses on receipt of evidence of demand within the meaning of clause 16.3.

16.8 If the Carrier, at its sole discretion, grants credit on any sums payable to the Carrier, the terms and conditions applicable to any credit (Credit terms) are available from the Carrier or his authorised agents or at https://terms.maerskline.com/credit. The applicable Credit terms will automatically apply to any granting of credit by the Carrier, unless otherwise agreed by the Carrier.

## 17. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and for general average contributions to whomsoever due. The Carrier shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due by the Merchant to the Carrier under any other contract whether or not related to this Carriage. The Carrier may exercise his lien at any time and any place in his sole discretion, whether the contractual Carriage is completed or not. In any event any lien shall extend to cover the cost of recovering any sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant. The Carrier's lien shall survive delivery of the Goods.

## 18. Optional Stowage, Deck Cargo and Livestock

18.1 The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers.

18.2 Goods whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant. The Carrier shall not be required to note, mark or stamp on the bill of lading any statement of such on deck carriage. Save as provided in clause 18.3, such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of goods for the purpose of the Hague Rules or US COGSA and shall be carried subject to such Rules or Act, whichever is applicable.

18.3 Goods (not being Goods stowed in Containers other than flats or pallets) which are stated herein to be carried on deck and livestock, whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the Carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and neither the Hague Rules nor US COGSA shall apply.

## 19. Methods and Routes of Carriage

19.1 The Carrier may at any time and without notice to the Merchant:

(a) use any means of transport or storage whatsoever;

(b) transfer the Goods from one conveyance to another including transshipping or carrying the same on a Vessel other than the Vessel named on the reverse hereof or by any other means of transport whatsoever and even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein;

(c) unpack and remove the Goods which have been packed into a Container and forward them via Container or otherwise;

(d) sail without pilots, proceed via any route, (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the port of discharge once or more often;

(e) load and unload the Goods at any place or port (whether or not any such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Goods at any such port or place;

(f) comply with any orders or recommendations given by any government or authority or any Person or body acting purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions.

19.2 The liberties set out in clause 19.1 may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of the Goods, including but not limited to loading or unloading other goods, bunkering or embarking or disembarking any person(s), undergoing repairs and/or drydocking, towing or being towed, assisting other vessels, making trial trips and adjusting instruments. Anything done or not done in accordance with clause 19.1 or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

## 20. Matters Affecting Performance

If at any time Carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage) the Carrier may at his sole discretion and without notice to the Merchant and whether or not the Carriage is commenced either:

(a) Carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this bill of lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this clause 20(a) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight as the Carrier may determine; or

(b) Suspend the Carriage of the Goods and store them ashore or afloat under these Terms and Conditions and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension. If the Carrier elects to invoke the terms of this clause 20(b) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight and costs as the Carrier may determine; or

(c) Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port, which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the Carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods. If the Carrier elects to use an alternative route under clause 20(a) or to suspend the Carriage under clause 20(b) this shall not prejudice his right subsequently to abandon the Carriage.

## 21. Dangerous Goods

21.1 No Goods which are or which may become of a dangerous, noxious, hazardous, flammable, or damaging nature (including radioactive material) or which are or may become liable to damage any Persons or property whatsoever, and whether or not so listed in any official or unofficial, international or national code, convention, listing or table shall be tendered to the Carrier for Carriage without previously giving written notice of their nature, character, name, label and classification (if applicable) to the Carrier and obtaining his consent in writing and without distinctly marking the Goods and the Container or other covering on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without obtaining his consent and/or such marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, noxious, hazardous, flammable or damaging nature, they may at any time or place be unloaded, destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight.

21.2 The Merchant warrants that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws, regulations or requirements which may be applicable to the Carriage.

21.3 The Merchant shall indemnify the Carrier against all claims, liabilities, loss, damage, delay, costs, fines and/or expenses arising in consequence of the Carriage of such Goods, and/or arising from breach of any of the warranties in clause 21.2 including any steps taken by the Carrier pursuant to clause 21.1 whether or not the Merchant was aware of the nature of such Goods.

21.4 Nothing contained in this clause shall deprive the Carrier of any of his rights provided for elsewhere.

## 22. Notification, Discharge and Delivery

22.1 Any mention in this bill of lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

22.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods or that part thereof shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

22.3 If the Carrier is obliged to discharge the Goods into the hands of any customs, port or other authority, such discharge shall constitute due delivery of the Goods to the Merchant under this bill of lading.

22.4 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at his discretion and without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility attaching to him sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier by the Merchant.

22.5 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the Carriage thereof.

## 23. Both to Blame Collision Clause

The Both to Blame Collision and New Jason clauses published and/or approved by BIMCO and obtainable from the Carrier or his agent upon request are hereby incorporated herein.

## 24. General Average and Salvage

24.1 General average to be adjusted at any port or place at the Carrier's option and to be settled according to the York Antwerp Rules 1994, this covering all Goods carried on or under deck. General average on a Vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that Vessel.

24.2 Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall, if required, be submitted to the Carrier prior to delivery of the Goods. The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.

24.3 Should the Carrier in its own discretion choose to post general average and/or salvage security due from cargo interests or pay general average and/or salvage contributions due from cargo interests, the Merchant hereby assigns to the Carrier all his rights in respect of the general average and/or salvage.

24.4 If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

## 25. Variation of the Contract and Validity

25.1 No servant or agent of the Carrier shall have the power to waive or vary any Terms and Conditions unless such waiver or variation is in writing and is specifically authorised or ratified in writing by the Carrier.

25.2 In the event that anything herein contained is inconsistent with any applicable international convention or national law, which cannot be departed from by private contract, the provisions hereof shall to the extent of such inconsistency but no further be null and void.

## 26. Law and Jurisdiction

For shipments to or from the U.S. any dispute relating to this bill of lading shall be governed by U.S. law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof. In all other cases, this bill of lading shall be governed by and construed in accordance with English law and all disputes arising hereunder shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the courts of another country. Alternatively and at the Carrier's sole option, the Carrier may commence proceedings against the Merchant at a competent court of a place of business of the Merchant.

*Maersk Line © 2013*